BARKER-LUBIN CO., Plaintiff-Appellant, *v.* UNKNOWN HEIRS OR
DEVISEES OF J. GERALD BARKER *et al.*, Defendants-Appellees.,

Fourth District    No. 17357

Opinion filed March 16, 1982.—Modified on denial of rehearing June 4, 1982.

Paul E. Adami, of Mohan, Alewelt & Prillaman, of Springfield, for appellant.

James W. Evans, of Phipps & Evans, P. C., of Champaign, for appellees
Champaign National Bank, Virgil C. Wikoff, and Helen M. Wikoff.

William L. Hatch, of Hatch, Blockman & McPheters, of Champaign, for
appellee Commercial Bank of Champaign.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Champaign
County which dismissed with prejudice its amended complaint for
foreclosure of a mechanic's lien against certain defendants. The trial court
made the appropriate finding under Supreme Court Rule 304(a) (73 Ill. 2d
R. 304(a)).

The amended complaint is in two counts, each of which concerns
three parcels of property. All parcels are in the same subdivision. The
basis for the trial court's order was the failure of the plaintiff to allocate its
claim among the six lots.

The essential allegations of each count are that the plaintiff is a
Delaware corporation with its principal place of business in Springfield,
Illinois, and that the defendant concerned in this appeal is the owner of
three lots in a subdivision located in Champaign County, Illinois; that
plaintiff entered into an agreement with the defendant's predecessor in
title to furnish building materials for the construction of multiple dwell-

ings upon the premises and did furnish such materials; that certain items were furnished on September 15, 1978, and others on October 27, 1978; that plaintiff caused to be served upon all interested parties a subcontractor's 90-day notice (Ill. Rev. Stat. 1979, ch. 82, par. 24) on December 14, 1978; and that a claim for mechanic's lien was filed in the office of the recorder of deeds of Champaign County (Ill. Rev. Stat. 1979, ch. 82, par. 7) on January 16, 1979. The instant foreclosure suit was then filed on September 29, 1980.

It is admitted, and the pleadings show, that neither the 90-day notice nor the claim for lien attempted to allocate the amount involved to any particular lot, but purported to be what is commonly called a "blanket" lien under a single contract.

The same thing is true of the amended complaint. In each count three lots in the same subdivision are named as the subject of the lien, but no attempt is made to allocate any particular amount of money to any one lot.

The trial court filed a memorandum which makes clear that in making its judgment of dismissal it relied almost entirely upon *Schmidt v. Anderson* (1911), 253 Ill. 29, 97 N.E. 291, and *Dougherty-Janssen Co. v. Danage Enterprises, Inc.* (1980), 80 Ill. App. 3d 1112, 400 N.E.2d 1023.

We believe that the trial court has misconstrued *Schmidt* and its essential holding. If pursued to its logical extreme, the holding of the trial court would make impossible the filing of a blanket lien, which is specifically permitted by section 7 of the Mechanics' Liens Act.

In *Schmidt* four properties were involved, and the contractor attempted to impose a lien upon all of them under a single contract, even though work on three of them had been completed more than four months prior to the filing of the claim. The supreme court held in the negative, saying:

"* * * The vital question in this case is whether the legislature intended by these changes to permit such a claim to be filed against buildings erected on several different lots under one entire contract, *even though the work on some of the houses had been performed and the materials for such houses were furnished more than four months before the claim for lien was filed or the suit begun to enforce the lien.*" (Emphasis added.) 253 Ill. 29, 32, 97 N.E. 291, 292.

It is thus apparent that the court's primary concern was with the four-month limitation period. The essence of its decision is that this period is not extended by the presence of a single contract covering several parcels of property. The onus still remains on the lien claimant, if he has not been paid, to take action within the limitations period. The court explained that the limitation was for the protection of third parties

dealing with the property and that if this period were extended by reason of a single contract, such protection would be lost, a result obviously not intended by the legislature.

The essential holding of *Schmidt*, therefore, is that if a single contract covers several parcels and the work has been completed or the materials furnished on one or more of those parcels more than four months before the filing of the claim for lien or the filing of suit, then the amounts must be apportioned among the parcels remaining which are still within the four-month limitation. If no such apportionment is possible, then the entire lien will fail.

In *Schmidt* it was conceded that one property (the "Oak street house") was still within the four-month period, but the court said:

"* * * We are therefore constrained to hold that this claim for lien cannot be enforced, even for labor performed or material furnished as to the Oak street house, because there are no data in the claim wherefrom the proper amount could be apportioned to that house." 253 Ill. 29, 33, 97 N.E. 291, 292.

The essential holding of *Schmidt* is that the presence of a single, or "entire," contract covering multiple properties will not override the four-month limitation period. The claimant in *Schmidt* was a contractor, as distinguished from a subcontractor, and there appears to be no reason why he could not allocate the value of labor and materials to the various locations. He chose, rather, to predicate his claim on the nature of his contract and the court held he could not pursue this theory which would nullify the four-month provisions of section 7.

A significant statement by the *Schmidt* court is:

"In our judgment the legislature did not intend to permit two or more buildings on two or more tracts of land to be included in one claim for lien unless the claim was filed within four months after the last labor was performed or the material furnished on each of the buildings." 253 Ill. 29, 33, 97 N.E. 291.

The clear import of this language is that the contractor will not be permitted to stack his building sites under an entire contract and thus frustrate the beneficial effect of the four-month limitation period. He must file claims *seriatim* within four months after each delivery. Even though the total claim is entire, growing out of an entire contract, it must be filed and refiled as to the individual locations for the protection of the rights of third parties in those individual locations. It is, of course, possible that more than one location will be within the four-month period from time to time, especially if a large number of properties are involved. This will doubtless require much closer attention to detail than in the case of a single property under a single contract, but it is not an insuperable burden in view of the extraordinary remedy allowed to a contractor.

We do not, therefore, view *Schmidt* as standing for the proposition that each time multiple properties are involved, there must be apportionment in order to enforce a lien. The lien will be valid as to any properties to which labor or materials have been furnished within four months of the filing of the claim.

While *Schmidt* involved a prime contractor who presumably had direct knowledge of the date of labor or materials furnished to each individual location, its rationale is equally applicable to subcontractors and those furnishing materials, as in the instant case, who may not be possessed of such information. The record here simply shows that the plaintiff, a supplier of materials, delivered those materials to a job site where multiple buildings were being constructed. The materials presumably were then allocated by the prime contractor to the various lots.

The amended complaint thus made out a *prima facie* case sufficient to withstand a motion to dismiss which admits all well-pleaded facts. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599.) It may well be that the proof will show some delivery beyond the four-month period, or even all delivery beyond such period. If so, *Schmidt* will apply and the lien will fail but this remains to be seen. *Schmidt* did not lay down a *per se* rule that each time multiple properties are involved, allocation is required.

The rule is an eminently sensible one. The supreme court has noted that in modern times many houses are mass-produced. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154.) As in the instant case, the supplier may well be many miles removed from the construction site where multiple dwellings are being erected and will have no means of determining how much of each load of material went into which of the several houses. He can therefore do little more than assert his lien against all the properties, but as previously pointed out, he must do so within four months of each delivery or be barred under *Schmidt*. Both the materialman and the purchaser of the premises are thus protected.

We do not quarrel with the holding in *Dougherty-Janssen Co.* which was also cited by the trial court, although we believe that some of the language used therein is too broad. The opinion indicates that the work on multiple parcels commenced in 1973 and was to be completed in seven phases. In 1975, the claimant attempted to perfect a lien against all phases, even though the first four phases had been completed and sold. The case fits exactly within the doctrine of *Schmidt*. A materialman cannot bootstrap himself out of the four-month limitation period by pleading a multiple parcel-single contract case.

Other arguments have been raised with regard to the timeliness of the filings of the 90-day notice and the claims for lien, but they apparently did

not enter into the trial court's decision. We therefore decline to pass upon them at this time. The matter may be considered at trial.

The order of the circuit court of Champaign County dismissing the amended complaint is therefore reversed and the cause is remanded to that court for further proceedings in accordance with the views expressed herein.

Reversed and remanded with directions.

GREEN, P. J., and TRAPP, J., concur.